PORTAGE COUNTY BAR ASSOCIATION *v.* SABARESE.

[Cite as *Portage Cty. Bar Assn. v. Sabarese,*
102 Ohio St.3d 269, 2004-Ohio-2697.]

(No. 2004–0036—Submitted March 15, 2004—Decided June 9, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Sharon A. Sabarese of Rootstown, Ohio, Attorney Registration No. 0042479, was admitted to the practice of law in Ohio in 1989. On May 13 and August 11, 2003, relator, Portage County Bar Association, charged respondent, in two complaints, with having violated the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline consolidated the cases and heard both causes and, based on the parties' stipulations and other evidence, made findings of fact and conclusions of law and recommended a sanction.

{¶ 2} As to the first complaint, board case No. 03–046, the panel found that Lauren A. Weaver had retained respondent to oversee the administration of her father's estate. During respondent's initial meeting with Weaver on July 28, 2000, respondent told Weaver that once she obtained Weaver's father's original will, which was in the possession of an out-of-town attorney, she would be able to complete the estate administration in approximately three months. Respondent also discussed her fee with Weaver during this meeting, requesting $1,500 for her services and $125 for court costs.

{¶ 3} Weaver paid respondent's fee, apparently with the understanding that it was an initial retainer. Respondent, however, recalled that she had told Weaver that this was a flat fee. Their fee agreement is not in writing. Respondent deposited the $1,500 into her personal account rather than placing any unearned funds into a client trust account.

{¶ 4} Weaver and her brother were beneficiaries under their father's will. Among other tasks, they needed respondent to file with the county auditor a tax-release form so that funds from their father's IRA, which were not subject to probate, could be distributed. The siblings also needed respondent to have their father's vehicle released from probate so that they could sell it. They planned to pay off the loan on the vehicle with part of the IRA proceeds.

{¶ 5} Respondent prepared various standard probate forms, some of which Weaver signed on September 15, 2000. Respondent also prepared and filed the tax-release form that was needed before substantial IRA assets could be transferred to Weaver and her brother. Respondent never filed any of the probate documents that she had prepared.

{¶ 6} Respondent failed, at times, to maintain adequate communication with Weaver. And although she requested Weaver's father's will by letter dated September 18, 2000, respondent did not obtain the will until October 10, 2000.

{¶ 7} Weaver discharged respondent on November 10, 2000. When Weaver retained new counsel, respondent delayed several weeks before transferring the estate case file to the new attorney. After her discharge, respondent told Weaver that she would provide her with an itemized account of her services and refund any unearned funds from the $1,500 fee. Respondent did not provide this accounting until relator's investigation and has not returned any of Weaver's money.

{¶ 8} On April 20, 2001, Weaver, her brother, and her father's estate sued respondent, claiming legal malpractice and breach of contract. Due to respondent's many debts, including extensive medical costs for her child, respondent filed a Chapter 13 bankruptcy petition. The bankruptcy reorganization plan was confirmed on July 29, 2003, and requires that respondent pay $2,750 to Weaver's father's estate.

{¶ 9} As to respondent's representation of Weaver, the parties stipulated and the panel found that respondent had violated DR 6–101(A)(3) by neglecting the estate that had been entrusted to her, DR 9–102(A) by depositing unearned fees directly into her personal account rather than holding them in trust, and DR 9–102(B)(3) by failing to timely render an appropriate accounting of funds.

{¶ 10} As to the second complaint, board case No. 03–064, the panel found that Vicki J. Knapp had retained respondent to represent her in a dissolution or, if necessary, a divorce. Respondent and Knapp first met on or about November 15, 2001, at which time they determined that respondent would prepare the paperwork necessary for a dissolution. Respondent further advised Knapp that, assuming that the termination of Knapp's marriage could be achieved through dissolution, a final hearing could be held 30 days after the petition for dissolution was filed. Respondent requested $1,500 in legal fees. Knapp paid $400 at their first appointment and the remaining $1,100 the following month. Respondent deposited these fees directly into her personal bank account rather than a client trust account.

{¶ 11} Thereafter, respondent failed at times to maintain adequate communication with Knapp. From December 2001 until April 2002, for example, the parties had minimal contact, and Knapp denied having received correspondence that respondent claimed to have sent her during that time. In April 2002, respondent and Knapp met to discuss details to be added to a separation agreement and a shared-parenting agreement, which respondent had prepared.

{¶ 12} Knapp discharged respondent in early July 2002 and retained other counsel. Although respondent did not provide Knapp with an itemized account of

her services immediately after her discharge, she did provide an accounting to relator during its investigation. Respondent also reimbursed Knapp in full by bank check, after her initial personal check was returned for insufficient funds.

{¶ 13} The parties stipulated and the panel found that respondent violated DR 6–101(A)(3) by neglecting Knapp's case, DR 9–102(A) by depositing unearned fees directly into a personal account, and DR 9–102(B)(3) by failing to timely render appropriate accounts to Knapp.

{¶ 14} In recommending a sanction for this misconduct, the panel considered the aggravating and mitigating elements of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the panel found that respondent's neglect of two clients' cases and commingling of funds constituted multiple offenses and a pattern of misconduct and that her delays harmed vulnerable clients. BCGD Proc.Reg. 10(B)(1)(c), (d), and (h). As mitigating, the panel found that respondent had no prior disciplinary record and had not acted dishonestly or out of self-interest. BCGD Proc.Reg. 10(B)(2)(a) and (b). Respondent had also fully refunded Knapp's money, conceded her obligation to repay $2,750 to the estate of Weaver's father, cooperated in the disciplinary process, and appeared to be of good character and reputation apart from these transgressions. BCGD Proc. Reg. 10(B)(2)(c), (d), and (e). The panel further found mitigating that respondent, a sole practitioner and single mother, was experiencing dire financial problems and other difficulties, during some of the events at issue, due in part to her child's medical bills and her ex-husband's significant child-support arrearages.

{¶ 15} The parties jointly proposed a sanction for the misconduct. Consistent with that proposal, the panel recommended that respondent be suspended from the practice of law for six months, with the entire period of the suspension stayed on the following conditions: (1) that respondent be placed on probation for one year pursuant to Gov.Bar R. V(9); and (2) that during the term of probation, respondent completes five hours of continuing legal education ("CLE") in law-office management or bookkeeping. The board adopted the panel's findings of misconduct and recommendation.

{¶ 16} Upon review, we agree that respondent violated DR 6–101(A)(3), 9–102(A), and 9–102(B)(3). We also agree that the recommended stayed suspension and probation is appropriate. See *Columbus Bar Assn. v. Jackson* (1997), 78 Ohio St.3d 463, 678 N.E.2d 920 (attorney's neglect of clients, including duties required for probating an estate, warranted a six-month suspension, all stayed, provided that a monitor oversaw attorney's work for six months).

{¶ 17} Accordingly, respondent is suspended from the practice of law in Ohio for a period of six months, but this suspension is stayed on the conditions that (1) she serve a one-year probation pursuant to Gov.Bar R. V(9), and (2) during the term of probation she completes five hours of CLE in law-office management or bookkeeping. If respondent fails to comply with these conditions, the stay shall be lifted and respondent shall serve the entire six-month suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

———

Kevin T. Poland and David S. Hirt, for relator.

Buckingham, Doolittle & Burroughs, L.L.P., and Peter T. Cahoon, for respondent.